UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALBERT AFFONSO on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAWTUCKET CREDIT UNION,<br><br>Defendant. | Civil Action No. _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Albert Affonso ("Plaintiff"), on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to the allegations regarding himself and on information and belief as to all other allegations.

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Pawtucket Credit Union ("PCU"), arising from routinely charging more than one Non-Sufficient Funds Failed Automated Clearing House ("ACH") Transaction Fee ("NSF Fee") on a single transaction.

2. This practice breaches contractual promises made in PCU's adhesion contracts and constitute deceptive practices.

3. In plain, clear, and simple language, the checking account contract documents promise that PCU will only charge one NSF Fee on a given transaction.

4. As happened to Plaintiff, however, PCU, in breach of its contract and the covenant of good faith and fair dealing, charges multiple such fees on the same item or failed transaction.

5. Plaintiff does not dispute PCU's right to either (a) reject a transaction and charge a

single NSF Fee or (b) pay a transaction and charge a single Overdraft ("OD Fee") on a transaction that actually overdraws the account, but PCU unlawfully maximizes its already profitable account fees with deceptive practices that also violate its contract.

6. In PCU's sole and undisclosed view, each time PCU processes an ACH transaction or check for payment after having been rejected for insufficient funds, it becomes a new, unique item or transaction that is subject to another NSF Fee or OD Fee. But PCU's "Account Documents" (as defined below) never even hint that this counterintuitive result could be possible.

7. PCU's contract indicates that only a single fee will be charged for however many times the request for payment is reprocessed. An electronic item reprocessed after an initial return for insufficient funds cannot and does not fairly become a new, unique item for fee assessment purposes.

8. PCU breaches its contract when it charges more than one fee on the same item, since the contract states—and reasonable consumers understand—that the same item can only incur a single NSF Fee or OD Fee.

9. PCU also breaches its duty of good faith and fair dealing when it charges multiple fees on a single transaction. Specifically, PCU abuses its contractual discretion by charging NSF or OD Fees upon each reprocessing of the same item.

10. PCU's customers have been injured by PCU's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with PCU.

11. The above-listed practices also violate Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1, et seq. ("RIDTPA"), as PCU's true practices are misrepresented to its customers.

12. On behalf of himself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## JURISDICTION

13. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than PCU.

## PARTIES

14. Plaintiff Albert Affonso is a citizen of Rhode Island.

15. Defendant PCU is one of Rhode Island's largest credit unions and is headquartered in Pawtucket, Rhode Island.

### I. PCU CHARGES TWO OR MORE FEES ON THE SAME ITEM

16. As alleged more fully herein, PCU's Account Documents allow it to take certain steps when its accountholders attempt a transaction but do not have sufficient funds to cover it. Specifically, PCU may (a) authorize the transaction and charge a *single* OD Fee; or (b) reject the transaction and charge a *single* NSF Fee.

17. In contrast to its Account Documents, however, PCU regularly assesses two or more NSF Fees, or an OD Fee after an NSF Fee(s) on the *same* item or transaction.

18. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice

of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one non-sufficient funds fee even if a transaction is resubmitted for payment multiple times.

19. PCU's Account Documents never disclose this practice. To the contrary, PCU's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

### A. Plaintiff's Experience

20. In support of his claims, Plaintiff offers an example of multiple fees that should not have been assessed against his checking account. As alleged below, PCU: (a) reprocessed a previously declined transaction; and (b) charged a fee upon reprocessing.

21. On November 7, 2018, Plaintiff attempted a single payment to Cox Communications.

22. PCU rejected payment of that transaction due to insufficient funds in Plaintiff's account, and the next day charged him a $37.50 "Failed ACH Transaction Fee" for doing so. Plaintiff does not dispute the initial fee, as it is allowed by PCU Account Documents.

23. Then, on November 13, 2018, PCU again rejected the payment, and charged a *second* $37.50 "Failed ACH Transaction Fee."

24. *In sum, PCU charged Plaintiff $75 in fees to attempt to process a single payment.*

25. Plaintiff understood the payment to be a single transaction as is laid out in PCU's Account Documents, capable at most of receiving a single NSF Fee (if PCU returned it) or a single OD Fee (if PCU paid it).

26. The same pattern occurred numerous times for Plaintiff, with PCU charging multiple fees for a single transaction.

### B. The Imposition of Multiple Fees on a Single Transaction Violates PCU's Express Promises and Representations

4

27. The Account Documents provide the general terms of Plaintiff's relationship with PCU and therein PCU makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

28. The Account Documents explicitly state that fees will only be assessed once per transaction or single item—e.g. a customer request for payment or transfer—when in fact PCU regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

29. PCU's Account Documents indicate that a singular fee can be assessed on checks, ACH debits, and electronic payments.

30. PCU's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.

31. According to the Fee Schedule:

Failed ACH Transaction Fee 37.50

Insufficient/Uncollected Funds Return 37.50

Insufficient/Uncollected Funds (Overdraft) Paid ATM & Everyday Debit Card Overdrafts

Transaction Amount $0.01 - $5 $7.50 ea.

$5.01 - $10 17.50 ea.

$10.01 - $15 27.50 ea.

$15.01+ 37.50 ea.

All Other Overdrafts Paid 37.50 ea.

See Exhibit "A" attached hereto and made a part hereof.

32. The same item or transaction cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

33. A "failed ACH transaction" is the same "failed ACH transaction" whether or not it has failed once or has failed numerous times.

34. Merriam-Webster defines "transaction" to mean "something transacted; *especially*: an exchange or transfer of goods, services, or funds." *Transaction*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/transaction (last visited June 23, 2019). There is no new "exchange or transfer" involved in a second or third attempt to process the same "failed" transaction.

35. There is zero indication anywhere in the Account Documents that the same ACH transaction is eligible to incur multiple NSF Fees, or an NSF Fee followed by an OD Fee.

36. The same item or transaction on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

37. There is zero indication anywhere in the Account Documents that the same transaction or item is eligible to incur multiple fees.

38. Even if PCU reprocesses an instruction for payment, it is still the same transaction or item. PCU's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

39. The Account Documents described never discuss a circumstance where PCU may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

40. In sum, PCU promises that one fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, PCU breached the contract when it charged more than one fee per item.

41. Reasonable consumers understand any given authorization for payment to be one, singular item, payment, or transaction.

42. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which PCU will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does PCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have PCU customers ever agree to such fees or practices.

43. Customers reasonably understand, based on the language of the Account Documents and PCU's other documents, that PCU's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees or an OD Fee if the transactions is later paid. In other words, it is always the same item or transaction.

44. PCU knows this. That is why, in June 2020, PCU for the first time disclosed its true multiple fee practice. Its new disclosure states:

> Nonsufficient funds (NSF) fees - If an item drafted by you (such as a check) or a transaction you set up (such as a preauthorized transfer) is presented for payment in an amount that is more than the amount of money available in your account, and we decide not to pay the item or transaction, you agree that we can charge you an NSF fee for returning the payment. Be aware that such an item or payment may be presented multiple times and that we do not monitor or control the number of times a transaction is presented for payment. You agree that we may charge you an NSF fee each time a payment is presented if the amount of money available in your account is not sufficient to cover the payment, regardless of the number of times the payment is presented.

See Exhibit "B" attached hereto and made a part hereof.

45. Banks and credit unions, like PCU, that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something PCU never did here.

46. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as PCU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Sept. 2018), https://www.firstcitizens.com/personal/banking/deposit-agreement (emphasis added).

47. For example, First Hawaiian Bank engages in the same abusive practices as PCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last accessed September 25, 2019) (emphasis added).

48. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an

item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

49. Central Pacific Bank, a leading bank in Hawaii, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

50. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

51. Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

9

https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf.

52. First Financial Bank states: "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure _of_ Charges.pdf.

53. Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

https://www.andrewsfcu.org/AndrewsFCU/media/Documents/Terms-and-Conditions_REBRANDED_Dec2019-Update.pdf

54. Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf?sfvrsn=6

55. Wright-Patt Credit Union states:

10

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.wpcu.coop/en-us/PDFDocuments/Important%20Account%20Information%20Disclosure%20-%20WPCU.pdf

56. Railroad & Industrial Federal Credit Union states:

> Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx

57. Partners 1st Federal Credit Union states.

> Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf

58. Members First Credit Union states,

> We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf

59. Community Bank, N.A. states,

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf

60. RBC Bank states,

> We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf

61. Diamond Lakes Credit Union states,

> Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

https://www.diamondlakesfcu.org/termsconditions.html

62. Parkside Credit Union states,

> If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf?__cf_chl_captcha_tk__=add6ebea42df3385074decd4b16c1f86a8369dc9-1580418763-0-AfXmB7FcyYTqzK9oMNbMSKM6k5fnKS5Xf-z7p3Tv-Pt951tDs7wM8yaaIV06w718t2nomyWR1Q8COwgpfgE07FJWZUeFkJN6lxbXDZG1SvidTWh Ym9l85AbCd5afw2imyGdtdzKhXl9bQ9TYkjOlTVM4w8OFJOtE3wVIHrEITnQnSfoR5mZxM 5O0bu4f_FHoHiJj0XsjNkVoGblk0-lti6-gMn-Wcu_o87SGQW6dOUF2i6rHGiM_CkdI-ULanKI2NS3KlhkYAuNatN9Jdwr7Plc6oJozMbZQeczuO7VlbRnuCFD0tjzkw1lsnof7uaRvLRA kfKYi3wh0tUU1c_Y6N4aH1qN8SPftOn8TYJHO7OoILvpMfamNTqv_djpbUl3GVA

63. PCU provides no such disclosure, and in so doing, deceives its accountholders.

### C. The Imposition of Multiple Fees on a Single Transaction Breaches PCU's Duty of Good Faith and Fair Dealing

64. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that PCU is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, PCU has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

65. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, PCU abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

66. PCU abuses the power it has over customers and their credit union accounts and acts contrary to reasonable expectations under the Account Documents when it charges fees on each iteration of the same payment. This is a breach of PCU's implied covenant to engage in fair dealing and to act in good faith.

67. Further, PCU maintains complete discretion not to assess NSF Fees or OD Fees on transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single item, PCU breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

68. It was bad faith and totally outside Plaintiff's reasonable expectations for PCU to use its discretion to assess two or more fees for a single attempted payment.

69. When PCU charges multiple fees, PCU uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. PCU uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

70. Further, on information and belief, Plaintiff alleges that Defendant did not comply with its own Funds Availability Policy regarding charging overdraft or NSF fees, at least until the Notice of Change of Funds Availability Policy purporting to be effective as of June 15, 2020, actually went into effect. Discovery will be required to further substantiate this, but on information and belief Plaintiff was harmed by this breach on more than one occasion, including but not limited to in November 2018.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated pursuant to F.R.C.P. 23. The Class is defined as:

> All consumers who, during the applicable statute of limitations, were charged multiple fees on the same item on a PCU checking account.

72. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

73. Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

74. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over

questions that may affect only individual class members because PCU has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

    a) Whether PCU improperly charged multiple fees on the same transactions;

    b) Whether the conduct enumerated above violates the contract;

    c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

    d) Whether the conduct enumerated above violates RIDTPA; and

    e) The appropriate measure of damages.

75. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to PCU's records. PCU has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

76. It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

77. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by PCU, as described herein.

78. Plaintiff is a more than adequate representative of the Class in that Plaintiff is a PCU checking accountholder and has suffered damages as a result of PCU's contract violations. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

79. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

80. PCU has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

81. All conditions precedent to bringing this action have been satisfied and/or waived.

## COUNT I
### BREACH OF CONTRACT INCLUDING THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
**(Individually and on Behalf of the Class)**

82. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

83. Plaintiff, and all members of the proposed Class contracted with PCU for checking account services, including debit card services.

84. PCU breached promises made to Plaintiff and all members of the proposed Class when, as alleged herein, PCU charged multiple fees on the same transactions.

85. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

86. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

87. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

88. PCU has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, PCU should not have used its discretion to charge multiple NSF Fees on the same transaction. The Account Agreements do not have a contract term

permitting multiple fees on the same transaction, and the documents are otherwise ambiguous as to any right for PCU to charge multiple fees on the same transaction.

89.   Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

90.   Plaintiff and all members of the proposed Class have sustained damages as a result of PCU's breaches of the contract.

## COUNT II
### VIOLATION OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
**(Individually and on Behalf of the Class)**

91.   Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

92.   Plaintiff asserts this Second Cause of Action individually and on behalf of all members of the Class against Defendant for violation of the Rhode Island Deceptive Trade Practices Act.

93.   Plaintiff and members of the Class were issued debit cards by PCU, which were linked to respective checking accounts, and their checking accounts authorized them to conduct ACH and check transactions.

94.   Defendant violated the RIDTPA by engaging in the practices and conduct complained of herein, affirmative misrepresentations and knowingly and intentionally employing an unfair and deceptive policies and practices of assessing OD and NSF Fees; and misrepresenting its policies and practices of assessing NSF Fees.

95.   Specifically, Defendant assesses these crippling NSF Fees on these transactions by mispresenting its practices in its Account Documents.

96.   PCU also engaged in unlawful conduct in violation of the RIDTPA by making knowing and intentional omissions. PCU knowingly failed to disclose its policies and practices of assessing OD and NSF Fees in its Account Documents.

97. PCU intended that Plaintiff and putative class members rely on the acts of concealment and omissions, so that Plaintiff and putative class members would continue to incur overdraft fees.

98. PCU's conduct caused Plaintiff and putative class members to suffer ascertainable losses in the form of excessive NSF Fees that, but for PCU's unfair and deceptive practices and policies, would not otherwise have been imposed.

99. A causal relationship exists between PCU's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had PCU not acted unlawfully, Plaintiff and putative class members would not have incurred excessive overdraft fees in violation of the RIDTPA.

100. As redress for PCU's repeated and ongoing violations of the RIDTPA, Plaintiff and putative class members are entitled to, inter alia, damages and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Class;

B. Declaring PCU's multiple fee policies and practices to be in breach of its contract with accountholders;

C. Restitution of all multiple fees paid to PCU by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F. For an award of reasonable attorneys' fees and cost pursuant to R.I. Gen. Laws §§ 6-13.1-1, *et seq.*;

G. For penalties as authorized by R.I. Gen. Laws §§ 6-13.1-1, *et seq.*;

H. For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

I. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury on all claims so triable.

Dated: July 1, 2020					Respectfully submitted,

/s/ Peter N. Wasylyk
Peter N. Wasylyk (RI Bar # 3351)
**Law Offices of Peter N. Wasylyk**
1307 Chalkstone Avenue
Providence, RI 02908
Tel: 401-831-7730
Fax: 401-861-6064
Email: pnwlaw@aol.com

Taras Kick, CA Bar No. 143379*
Taras@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@Kicklawfirm.com

Jeffrey D. Kaliel*
Sophia Gold*
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com
*Pro Hac Vice applications to be submitted

*Attorneys for Plaintiff and the Putative Class*